**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.                                                 **Criminal Action No. 3:09CR7**
                                                           **JUDGE BAILEY**

**SUSAN A. WATTS,**

      **Defendant.**

**REPORT AND RECOMMENDATION TO**
**DENY DEFENDANT'S MOTION TO SUPPRESS [21]**

## I.     INTRODUCTION

On March 24, 2009, came the United States of America by Erin Reisenweber, Assistant United States Attorney, and also came the Defendant, Susan A. Watts, in person and by her counsel, Robert Barrat, for an evidentiary hearing in the above-styled criminal action. This is a Report and Recommendation on Defendant's Motion to Suppress [21].

## II.     BACKGROUND

**1.**     On February 3, 2009, the Federal Grand Jury for the Northern District of West Virginia, Martinsburg Division, indicted the Defendant on four (4) counts.

**2.**     The charges in the February 3, 2009, indictment against the Defendant are as follows:

Count One (1) -    Unauthorized Use of an Access Device in violation of 18 U.S.C. §1029(a)(2);
Count Two (2) -    Aggravating Identity Theft in violation of 18 U.S.C. §1028(a)(1)
Count Three (3) -    Unauthorized Use of an Access Device in violation of 18 U.S.C. §1029(a)(2);
Count Four (4) -    Aggravating Identity Theft in violation of 18 U.S.C. §1028(a)(1)

**3.**     On March 5, 2009, the Defendant filed a Motion to Suppress [21].

**4.**     On March 24, 2009, the Court held an evidentiary hearing on Defendant's motion to

suppress. The Government called Special Agent James P. O'Neill and Sgt. Bill Blednick to testify. Defense counsel cross-examined these witnesses at length and also called the Defendant, Susan Watts, to testify.

### III. FACTUAL PRESENTATION

1. A summary of the Government's witnesses testimony is as follows:

On May 7, 2008, Special Agent James P. O'Neill accompanied by Sgt. Bill Blednick interviewed Susan Watts concerning Watts' knowledge of the unauthorized use of two VA hospital inpatients debit cards. The agents testified that they approached Ms. Watts as she was leaving the office of her former supervisor, Sherrie Orvis, at the VA Medical Center. The agents identified themselves to the defendant and explained their reasons for wanting to speak with her. The defendant agreed to be interviewed and the three then went back into Ms. Orvis' office which is where the interview started. Special Agent O'Neill advised the defendant Watts that she was not under arrest.

The interview began at approximately 2:10 pm. Defendant asked during the interview whether she needed an attorney and Special Agent O'Neill told her that he could not provide her with legal advice and that the choice to get an attorney was her decision. Special Agent O'Neill documented this occurrence in his Memorandum of Interview. The defendant did not ask to have an attorney present, so the agents continued with the interview. At about 3:00pm, the agents became concerned that Ms. Orvis might need her office back, and they asked the defendant if she minded to walk back to the VA police department to complete the interview. Defendant walked back to the VA police department with the agents and even stopped to smoke a cigarette along the way. They arrived at the VA police department and the remainder of the interview took place in Sgt. Blednick's

office. The interview concluded at approximately at 3:45pm and the Defendant left. The agents further testified that the Defendant was never under arrest nor was she ever in their custody. She was free to leave at any time during the interview. Further, the agents perceived that the Defendant understood that she was not in custody and that she was free to leave at any time during the interview.

2. A summary of the Defendant's testimony is as follows:

The Defendant testified that she was approached by the two agents as she was leaving her former supervisors office at the VA Medical Center on May 7, 2008. The Defendant consented to the interview but felt like she really didn't have a choice. Defendant testified that although she didn't feel as though she were in custody or under arrest that she did feel as though she was not free to leave during the interview. Defendant also testified that the initial part of the interview took place in the office of Sherrie Orvis at the VA Medical Center then moved to the VA Police Department. Defendant testified that the agents stayed with her while she got a cigarette from someone and smoked it on the way to the VA police department. The Defendant testified that although she knew she was not under arrest or in custody, she felt like she wasn't free to leave, especially when they arrived at the VA police department. She further testified that she asked several times during the interview whether she needed an attorney.

## IV. LEGAL ANALYSIS

*Miranda* warnings are required when a subject is interrogated while in custody. *Miranda v. Arizona*, 384 U.S. 436 (1966).

> Absent formal arrest *Miranda* warnings only apply 'where there has been such a restriction on a person's freedom as to render him 'in custody.' '" *Parker,* 262 F.3d at 419 (4th Cir.2001) (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam)). An individual is in custody

> "when, under the totality of the circumstances, 'a suspect's freedom from action is curtailed to a 'degree associated with formal arrest.' ' " *Id.* (quoting *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). The operative question is whether, viewed objectively, "a reasonable man in the suspect's position would have understood his situation" to be one of custody. *Berkemer,* 468 U.S. at 422, 104 S.Ct. 3138.

*Accord United States v. Colonna*, 511 F.3d 431, 435 (4th Cir. 2007).

Although it is not conclusive, "...informing a defendant that he is not under arrest is one factor frequently considered to show lack of custody. *Id.* At 435-36.

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited.

*Accord Oregon v. Mathiason,* 429 U.S. 492, 495 (1977).

The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings. *Davis v. U.S.,* 512 U.S. 452, 456-57 (1994). However, under *Miranda*, the U.S. Supreme Court has held that a suspect has a right to counsel during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1966). It is well established that once the right to counsel has been asserted, a subject in custody may not be interrogated outside counsel's presence "unless the accused himself initiates further communication, exchanges or conversations with the police" *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). *Accord United States v. Johnson*, 400 F.3rd187, 194-97 (4th Cir.), *cert. denied,* 546 U.S. 856 (2005). However, the Courts have consistently found that certain statements or questions are insufficient to

constitute an assertion of the right to counsel. *See Davis v. United States,* 512 U.S.452, 259-62 (1994)(finding that defendant asking, "Maybe I should talk to a lawyer" was not a sufficient assertion of his right to counsel). *See also Mueller v. Angelone,* 181 F.3d 557, 573-74(4th Cir.1999)(finding "Do you think I need an attorney?" to be insufficient as an assertion of right to counsel).

## V.  PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.**  The first factual issue before the court is whether a reasonable person in Ms. Watts position during the interview on May 7, 2008, would have felt that her freedom was curtailed to a degree associated with a formal arrest or would have felt that she was in fact in custody despite having been advised that she was not under arrest.

The Court finds as follows regarding this issue:

1. On May 7, 2008, Defendant Watts was approached by agents at the office of Defendant's former supervisor in the VA Medical Center.  The agents asked Ms. Watts if she would answer some questions and Ms. Watts consented to an interview with the agents.

2. Defendant Watts was not under arrest and was not in custody during the interview. Defendant Watts was free to leave the interview at any time.  The door to the interview rooms were shut but the doors were not locked from the inside and Defendant Watts was able to leave the interview room at anytime.  In fact, Defendant Watts and the agents did leave one interview room and walked outside to go to a different interview room at the VA police department.  During that walk, Ms. Watts stopped to get a cigarette and smoked it.  After the 1 ½ hour interview, Ms. Watts left the VA police department free to go about her business.

3. In reviewing the totality of the circumstances surrounding this interview, a reasonable person in Defendants Watts position during the May 7, 2008, interview would have realized that she was not in custody and that she was free to leave the interview at any time.

Therefore, the agents were not required to give a *Miranda* warning during this interview. *Accord United States v. Colonna*, 511 F.3d 431, 435 (4th Cir. 2007). The Defendant's Motion to Suppress the Statement made May 7, 2008 should be **DENIED**.

**B**. The second factual issue is whether Defendant Watts asserted her right to counsel during the interview.

1. The undisputed testimony was that Defendant Watts asked the agents if she needed an attorney. The agent responded that he could not provide legal advice and that it was entirely Ms. Watts decision on whether she needed an attorney.

2. The evidence is clear that Ms. Watts never asked for an attorney to represent her during the interview nor did she ask to stop the interview to consult with an attorney.

The law is clear that Ms. Watts was not entitled to an attorney unless she was under arrest or in custody. *Davis v. U.S.,* 512 U.S. 452, 456-57 (1994). The Court has determined in this case that Ms. Watts was not in custody at the time of the interview and therefore, *Miranda* warnings did not need to be given by the agents . *Miranda v. Arizona*, 384 U.S. 436 (1966). However, even if Ms. Watts was in custody, her question, "Do you think I need an attorney?" is insufficient as an assertion of right to counsel. *See also Mueller v. Angelone,* 181 F.3d 557, 573-74(4th Cir.1999). In addition, Ms. Watts continued with the interview even after the agent

told Ms. Watts that it was her decision whether she needed an attorney.

Therefore, the undersigned Magistrate Judge recommends that the District Court **DENY** Defendant's Motion to Suppress Statement made May 7, 2008 [21].

## VI.     RECOMMENDATION AND CONCLUSION

For the above reasons, the undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Suppress Statement Made May 7, 2008[21].

The Court notes the Defendant's objection to the ruling.

Within ten (10) days of receipt of service of this Report and Recommendation, any party who appears *pro se* and any counsel of record may file with the Clerk of the Court any written objections to this Recommendation. The party should clearly identify the portions of the Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the Honorable John P. Bailey. Failure to timely file objections to this Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Recommendation. 28 U.S.C. § 636(b)(1).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for

Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: March 25, 2009**

                                                  /s/ David J. Joel
                                                  DAVID J. JOEL
                                                  UNITED STATES MAGISTRATE JUDGE