**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                                    **CRIMINAL NO. 3:09-CR-7**
                                                                        **(Judge Bailey)**

**SUSAN A. WATTS,**

    **Defendant.**

## ORDER ADOPTING REPORT AND RECOMMENDATION DENYING DEFENDANT'S MOTION TO SUPPRESS

Pending before this Court is the Report and Recommendation (Doc. 31) issued by Magistrate Judge David J. Joel on March 25, 2009. This Court, having reviewed the Defendant's Combined Motion and Memorandum to Suppress Statement Made May 7, 2008 (Doc. 21), United States' Response to Defendant's Motion to Suppress Statement (Doc. 28), the Report and Recommendation (Doc. 31), Defendant's Objections to Hon. Magistrate Joel's Report and Recommendation to Deny Defendant's Motion to Suppress (Doc. 33), and the transcript of the evidentiary hearing before Magistrate Judge Joel (Doc. 36), does adopt the Report and Recommendation for the following reasons:

The motions to suppress emanate from an interview of the defendant at her former place of work on May 7, 2008. On that day, Special Agent James P. O'Neill accompanied by Sgt. Bill Blednick, a Veterans Administration criminal investigator interviewed Susan Watts concerning her knowledge of the unauthorized use of two VA hospital inpatients debit cards. The agents testified that they approached Ms. Watts as she was leaving the office

1

of her former supervisor, Sherrie Orvis, at the VA Medical Center. The agents identified themselves to the defendant and explained their reasons for wanting to speak with her. The defendant agreed to be interviewed, and the three then went back into Ms. Orvis' office, which is where the interview started. Special Agent O'Neill advised Ms. Watts that she was not under arrest.

The interview began at approximately 2:10 pm. During the interview, the defendant asked whether she needed an attorney, and Special Agent O'Neill told her that he could not provide her with legal advice and that the choice to get an attorney was her decision. Special Agent O'Neill documented this occurrence in his Memorandum of Interview. The defendant did not ask to have an attorney present, so the agents continued with the interview. At about 3:00 pm, the agents became concerned that Ms. Orvis might need her office back, and they asked the defendant if she minded to walk back to the VA police department to complete the interview. Defendant walked back to the VA police department with the agents and even stopped to smoke a cigarette along the way. They arrived at the VA police department and the remainder of the interview took place in Sgt. Blednick's office. The interview concluded at approximately at 3:45 pm and the defendant left. The agents further testified that the defendant was never under arrest nor was she ever in their custody. She was free to leave at any time during the interview. Further, the agents perceived that the defendant understood that she was not in custody and that she was free to leave at any time during the interview.

The defendant testified that she did consent to the interview, but felt like she really did not have a choice. She testified that, although she did not feel as though she were in custody or under arrest, that she did not feel as though she was free to leave during the

2

interview. Defendant testified that the agents stayed with her while she got a cigarette from someone and smoked it on the way to the VA police department. Ms. Watts further testified that although she knew she was not under arrest or in custody, she felt like she was not free to leave, especially when they arrived at the VA police department. She further testified that she asked twice during the interview whether she needed an attorney, but at no time did she ask to terminate the interview.

The defendant contends that her statement should be suppressed on two bases. First, that her **Miranda** rights were violated by her interview in the absence of the appropriate warnings. Second, that the failure to terminate the interview upon her inquiry concerning an attorney violated her constitutional rights. This Court finds neither of the asserted grounds valid.

"**Miranda** warnings are required when a subject is interrogated while in custody. **Miranda v. Arizona**, 384 U.S. 436 (1966). The test for determining whether an individual is 'in custody' for **Miranda** purposes is whether, under the totality of the circumstances, the 'suspect's freedom of action is curtailed to a degree associated with formal arrest.' **Berkemer v. McCarty**, 468 U.S. 420, 440 (1984). *Accord* **United States v. Colonna**, 511 F.3d 431, 435 (4th Cir. 2007); **United States v. Uzenski**, 434 F.3d 690, 704-05 (4th Cir. 2006); **United States v. Photogrammetric Data Services**, 259 F.3d 229, 240-42 (4th Cir. 2001, *cert. denied*, 535 U.S. 926 (2002); and **United States v. Howard**, 115 F.3d 1151, 1154 (4th Cir. 1997)." Horn, **Fourth Circuit Criminal Handbook**, § 41 (2008 ed.).

"The fact that a suspect is advised that he is 'not under arrest' is one factor to consider in determining whether he is 'in custody' for purposes of **Miranda**, but is not

3

dispositive.  ***Colonna***, 511 F.3d at 435-36 (where 'coercive pressures existed' and 'a reasonable man in [the defendant's] position would have felt that his freedom was curtailed to a degree associated with formal arrest' defendant was 'in custody' despite having been advised that he was 'not under arrest' . . ..).  Accord ***Davis v. Allsbrooks***, 778 F.2d 168, 171-72 (4th Cir. 1985) ('Though informing a suspect that he is not under arrest is one factor frequently considered to show lack of custody, it is not a talismanic factor')."  Horn, *supra*.

"Although '[a]ny interview of one suspected of a crime will have coercive aspects to it,' it does not follow that ordinary crime scene investigation or non-custodial questioning of a witness or suspect require ***Miranda*** warnings.  ***Oregon v. Mathiason***, 429 U.S. 492, 495 (1977).  Accord ***Miranda***, 384 U.S. at 477-78) . . .."  Horn, *supra*.

"'The fact that questioning takes place at a police station is not by itself enough to establish custody so long as the individual being interviewed would perceive that his freedom of movement was not constrained to a degree associated with arrest.'  ***Howard***, 115 F.3d at 1155, *citing* ***California v. Beheler***, 463 U.S. 1121, 1125 (1983).  Accord ***Mathiason***, 429 U.S. 492, 495 (1977) (***Miranda*** warnings not required when suspect voluntarily accompanies police to station to answer questions, and then is allowed to leave). . .."  Horn, *supra*.

Based upon a totality of the circumstances, this Court finds that the defendant was not "in custody," requiring ***Miranda*** warnings.  This finding is based upon the following facts:

1.      At the outset, she was asked whether she was willing to talk to the investigators, and she agreed;

4

2. The interview commenced in her former supervisor's office;

3. She was told that she was not under arrest;

4. In the office, the defendant sat nearest to the door;

5. When the interview was moved to the VA police office to accommodate the former supervisor's need for her office, the participants traveled in a leisurely manner, with the defendant stopping to smoke a cigarette on the way;

6. The defendant was not placed in any type of restraints;

7. She never asked to conclude the interview or to leave; and

8. She consented to a search of her purse during the interview.

Based upon these facts, a reasonable person in defendant's position would not have felt that she was "in custody," triggering **Miranda** warnings.

With respect to the discussion of counsel, "[o]nce the right to counsel is asserted, a subject in custody may not be interrogated outside counsel's presence 'unless the accused himself initiates further communication, exchanges, or conversations with the police.' ***Edwards v. Arizona***, 451 U.S. 477, 484-85 (1981). *Accord **United States v. Johnson***, 400 F.3d 187, 194-97 (4h Cir.), *cert. denied*, 546 U.S. 856 (2005)." Horn, *supra* at § 42.

"To invoke the right to counsel, a suspect must take an action that 'can reasonably be construed to be an expression of a desire for the assistance of an attorney.' ***United States v. Johnson***, *supra*, quoting ***McNeil v. Wisconsin,*** 501 U.S. 171, 178 (1991).

In ***Davis v. United States,*** 512 U.S. 452, 459 (1994), the Supreme Court stated that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a

reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." (emphasis in original).

"The defendants in ***Davis***, and the cases relying on it, voiced equivocal requests for counsel, such as, 'Maybe I should talk to a lawyer,' *id.* at 462; 'I might want to talk to an attorney,' ***United States v. Zamora,*** 222 F.3d 756, 765-66 (10th Cir. 2000); 'I think I need a lawyer," ***Burket v. Angelone,*** 208 F.3d 172, 198 (4th Cir. 2000); 'Do you think I need an attorney here?,' ***Mueller v. Angelone,*** 181 F.3d 557, 573-74 (4th Cir. 1999); I 'might want to get a lawyer then, huh?,' ***United States v. Posada-Rios,*** 158 F.3d 832, 867 (5th Cir. 1998); 'I think I want a lawyer,' 'Do you think I need a lawyer?,' ***Diaz v. Senkowski,*** 76 F.3d 61, 63-65 (2d Cir. 1996); 'I can't afford a lawyer but is there anyway I can get one,' ***Lord v. Duckworth,*** 29 F.3d 1216, 1219-21 (7th Cir. 1994)." ***United States v. Johnson***, 400 F.3d 187, 195 (4th Cir. 2005).

In this case, the defendant's inquiry as to whether she needed a lawyer is similar to the question posed in ***Mueller v. Angelone,*** *supra*.  In ***Mueller***, the Fourth Circuit held that a defendant's query to an officer, midway through his more than four-hour interrogation, "Do you think I need an attorney here?" did not require the officer to cease all questioning, as defendant's question did not constitute an unambiguous request for counsel, and thus did not implicate the rule of ***Edwards***.

In light of the foregoing authority, this Court finds that the defendant's inquiry concerning counsel was insufficient to require the cessation of the interview.

For the reasons stated above, this Court **ADOPTS** the Report and Recommendation of the Magistrate Judge **(Doc. 31)**. The Defendant's Combined Motion and Memorandum to Suppress Statement Made May 7, 2008 **(Doc. 21)** is **DENIED**. Defendant's Objections to Hon. Magistrate Joel's Report and Recommendation to Deny Defendant's Motion to Suppress **(Doc. 33)** is **OVERRULED**.

It is so **ORDERED**.

The Clerk is directed to transmit certified copies of this Order to the defendant and all counsel of record.

**DATED**: May 4, 2009.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE